NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Stephen ZACKS,<br><br>    Plaintiff,<br><br>v.<br><br>NETJETS INC., a Delaware Corporation;<br>EXECUTIVE JET, INC., a Delaware<br>Corporation; and DOES 1 through 10,<br>inclusive,<br><br>    Defendants. | Civ. No. 11-2537<br><br>OPINION |

THOMPSON, U.S.D.J.

## I.   INTRODUCTION

This matter has come before the Court on the Motion to Dismiss [docket # 3] filed by Defendant NetJets Inc. (formerly known as Executive Jet, Inc.). Plaintiff Stephen Zacks opposes the motion [5]. The Court has decided the motion on consideration of the parties' written submissions, without holding oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons stated below, Defendant's Motion is granted in part and denied in part.

## II.   BACKGROUND[1]

Plaintiff filed this lawsuit against his former employer, NetJets Inc., alleging breach of his employment contract and breach of the implied covenant of good faith and fair dealing.

In 2000, Defendant hired Plaintiff as a Vice President of Strategic Marketing. (Compl. ¶ 7.) Under the parties' Employment Agreement ("the Agreement"), the initial term of Plaintiff's

---

[1] The following facts are taken from Plaintiff's Complaint [1] and are accepted as true for purposes of deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

1

employment was three years, but the Agreement provided that it would be automatically extended for successive one-year periods unless either party objected to the extension.[2] (*Id*. at ¶ 9.) The Agreement also provided various grounds for termination of Plaintiff's employment "prior to expiration of the initial term . . . or any extension thereof[.]" (*Id*. Ex. A., Employment Agreement, at 6) [1]. Relevant to this case, Defendant could terminate Plaintiff "without cause" under Section 8(a)(iv). (*Id*. Ex. A, at 6.) If so, the termination would be "effective thirty days after delivery of the notice of termination." (*Id*.) Under the "Salary Continuation" provision, Plaintiff would also be entitled to "a lump sum amount equal to one-fourth (1/4th) of [Plaintiff's] Base Salary[.]" (*Id.* Ex. A, at 7.)

Plaintiff's Employment Agreement was renewed every year from 2003 to 2009. (Compl. at ¶ 12.) His base salary for the year beginning August 7, 2009, was $450,000. (*Id*. at ¶ 17.) However, on October 5, 2009, Plaintiff received a paycheck based on a $350,000 salary. (*Id*. at ¶ 18.) Plaintiff claims that this unilateral reduction of his salary constitutes a breach of the Agreement. (*Id*.) Plaintiff brought the alleged breach to the attention of the company and forwarded a copy of his Employment Agreement to a company executive. Two days later, Plaintiff received a response from Senior Vice President and General Counsel Jordan Hansell. According to the Complaint, "Hansell stated that he had 'now had a chance to review'" the Employment Agreement and that "he wished he had been aware of [the Agreement's] existence earlier." (Compl. ¶ 21.) Hansell further stated that Defendant's new parent company "has a policy against the use of such employment agreements" and is "moving away from their use." (Decl. of Peter J. Pizzi Ex. A, Hansell Letter 1) [3-2].[3] Accordingly, Defendant had "determined

---

[2] The parties executed an Amendment to the Employment Agreement in 2002. (Compl. ¶ 11) That Amendment is not at issue here.

[3] Although the Hansell Letter is not part of Plaintiff's pleadings, the Complaint relies heavily on the Letter as a basis for his breach claims. The Court may thus consider the Letter in deciding the motion to dismiss. *See Lum v. Bank*

to terminate the Agreement pursuant to Section 8(a)(iv)," the without-cause provision. (*Id.*) The email professed to serve "as the thirty day notice of such termination required by that Section." (*Id.*) Plaintiff was given the choice between two alternatives: (1) Plaintiff's employment would terminate entirely after the thirty days and Defendant would pay Plaintiff one-quarter of his base salary; or (2) the Employment Agreement would terminate after the thirty days but Plaintiff could continue his employment under new terms, namely the $350,000 salary. (*Id.*); (Compl. ¶ 21). Plaintiff rejected the new terms and ceased his employment thirty days later, on November 7, 2009. (Compl. ¶ 23.) Plaintiff claims that the offer of materially different terms and attempt to change the terms of the Agreement without following the required procedures constitute breaches of the contract. (*Id.* at ¶ 35.) Plaintiff further claims that Defendant's actions violated New Jersey's implied covenant of good faith and fair dealing. (*Id.* at ¶ 40.)

Around the time Plaintiff ended his employment, Defendant made the following payments to Plaintiff: (1) $8,333.33 to compensate for the underpayment of Plaintiff's salary in October 2009 (*i.e.* the difference between the $450,000 salary and the $350,000 salary for the month of October); (2) $8,653.85 for the first six days of November 2009, based on the $450,000 salary; (3) payment for Plaintiff's unused vacation days accrued up to November 6, 2009; and (4) $112,500 as the lump-sum payment of one-quarter of Plaintiff's $450,000 salary. (*Id.* at ¶ 26.)

Plaintiff insists, nevertheless, that he is entitled to additional damages as a result of Defendant's alleged breaches of the Agreement. Plaintiff demands (1) six additional months of salary as compensation for the remaining unpaid months of the one-year term that would have run from August 7, 2009, to August 6, 2010; (2) payment for the fifteen additional days of vacation he would have accrued through the end of the contract term; (3) compensation for the

---

*of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (stating that, in deciding a 12(b)(6) motion, courts may consider "documents that form the basis of a claim").

health and other benefits he would have received through the contract term; and (4) a bonus of at least $90,000. (Compl. ¶ 27.)

Defendant NetJets Inc. now moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has not asserted a viable claim for breach of the Employment Agreement or the covenant of good faith and fair dealing.

## III. ANALYSIS

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a 12(b)(6) motion, a district court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to plaintiff, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded facts have been identified, a court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009)). A claim is only plausible if the facts pleaded allow a court reasonably to infer that the "defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1949).

### B. Breach of Contract

The Employment Agreement is governed by New Jersey law. (Compl. Ex. A, at § 10(i).) To state a claim for breach of contract under New Jersey law, a plaintiff must show: 1) the existence of a valid contract, 2) a material breach of the contract by the defendant, and 3)

4

damages resulting from the breach. *Malloy v. Intercall, Inc.*, Civ. No. 08-01182, 2010 WL 5441658, at *6 (D.N.J. Dec. 28, 2010) (citing *Fletcher-Harlee Corp. v. Pote Concrete Contractors*, Inc., 421 F. Supp. 2d 831, 833 (D.N.J. 2006), aff'd, 482 F.3d 247 (3d Cir. 2007)). The parties do not dispute that the Employment Agreement is a valid contract, but Defendant argues that it has not breached the contract and that, even if it had, Plaintiff has not suffered any damages because he was compensated in accordance with a valid termination of his employment. Although we agree that Plaintiff does not appear to have suffered any actual damages, we find that there has nevertheless been a technical breach of the contract susceptible perhaps to nominal damages. Accordingly, we decline to dismiss the breach of contract claim at this stage of the litigation.

First, Defendant argues that there has been no breach of contract because the company exercised its right to terminate Plaintiff without cause in accordance with the terms of the Agreement. (Mem. in Supp. 1) [3-1]. True, Plaintiff's ultimate termination appears to have followed the express contract terms. However, two days before properly exercising its right of termination, Defendant lowered Plaintiff's salary. This temporary salary reduction—however inconsequential it may be—satisfies the breach element, even if the ultimate termination does not. Defendant also argues that, because the temporary underpayment was cured within a month, there was no *material* breach. Defendant's payment of compensation does indeed go to the materiality of the breach. *See Neptune Research & Dev., Inc. v. Teknics Indus. Sys., Inc.*, 563 A.2d 465, 470 (N.J. Super. Ct. App. Div. 1989) (stating that materiality is evaluated with regard to five criteria, including "extent to which the injured party can be adequately compensated" and "likelihood that the party failing to perform or to offer to perform will cure his failure") (quoting

5

Restatement (Second) of Contracts § 241 (1981)).[4]  And because the temporary breach was quickly remedied, Defendant may very well be able to prove that the breach was non-material. We refrain, though, from deciding whether the breach was material at this stage of the proceedings because "[w]hether conduct constitutes a material breach is ordinarily a question reserved for disposition by the jury." *Chance v. McCann*, 966 A.2d 29, 42 (N.J. Super. Ct. App. Div. 2009) (citation omitted); *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J. Super. Ct. App. Div. 2007) (rejecting trial court's ruling as a matter of law that breach was non-material and stating that "giving plaintiff all appropriate inferences on a motion to dismiss, that question more appropriately belonged to the jury").  In addition, despite the strong possibility that the breach was purely technical and non-material, Plaintiff's claim can still proceed, at least for nominal damages, as we discuss below. *See Murphy*, 920 A.2d at 690 ("[E]ven if the breach was not material, that only bears upon the quantum of damages, as even a nonmaterial breach of a contract may be compensable.") (citations omitted).

Second, Defendant argues that because it compensated Plaintiff for the reduction and then terminated him in accordance with the contract, Plaintiff cannot prove damages—an element of the claim for breach of contract.  Although it appears that Plaintiff has not suffered any actual damages as a result of the salary reduction, this is not fatal to his claim.  "'The general rule is that whenever there is a breach of contract or an invasion of a legal right, the law

---

[4] A material breach is one that "goes to the essence of a contract[.]" *Goldman S. Brunswick Partners v. Stern*, 627 A.2d 1160, 1163 (N.J. Super. Ct. App. Div. 1993) (quotation and citation omitted).  The following "flexible criteria" are used to evaluate materiality:
    (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
    (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
    (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
    (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
    (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing."
*Id*. (quoting Restatement (Second) of Contracts § 241 (1981)).

ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages.'" *City of Trenton v. Cannon Cochran Mgmt. Servs., Inc.*, 2011 WL 3241579, at *4 (N.J. Super. Ct. App. Div. Aug. 1, 2011) (quoting *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1228 (N.J. 1984)); *Allia v. Target Corp.*, Civ. No. 07-4130, 2010 WL 1050043, at *14 n.22 (D.N.J. Mar. 17, 2010) (finding that claimant's failure to ask for monetary damages "is not fatal to its claim, as [claimant] need only prove a breach of the contract, and not actual damages"). Therefore, Plaintiff appears to have stated a valid claim for breach of contract, even if he most likely will be entitled to nominal damages only.

### C. Breach of Covenant of Good Faith and Fair Dealing

The Complaint alleges that the same actions that support the breach of contract claim also support a claim for breach of the covenant of good faith and fair dealing. In New Jersey, such a covenant is implied in every contract. *Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943, 953 (N.J. 2010). Although there is no universally accepted test for this claim, a plaintiff must generally prove "(1) the defendant act[ed] in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties . . . ." *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (citing *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (N.J. 2005)). Defendant argues that Plaintiff's claim fails, in part, because he has not alleged facts that would support a finding of malicious motive. (Mem. in Supp. 1–2.) We agree.

Plaintiff's Complaint alleges that the Defendant breached the implied covenant by (1) unilaterally reducing Plaintiff's salary; (2) attempting to modify the Agreement without following required procedures; (3) offering Plaintiff continuing employment under different terms; and (4) refusing to give Plaintiff the full rights and benefits he would be entitled to over

7

the course of the contract year.  (Opp'n Br. 11–12.)  The first of these actions presents a plausible claim for breach, as we have already discussed.  But there are no factual allegations that would show the breach was done in bad faith or with malice.  Rather, Plaintiff's own complaint suggests that Defendant was simply unaware of the Employment Agreement when it reduced Plaintiff's salary.  (*See* Compl. ¶ 21 ("Hansell . . . stated he wished he had been aware of [the Agreement's] existence earlier.").)  The second action—failure to follow required procedures—is premised on Defendant's notifying Plaintiff of his termination by email instead of "by personal delivery or overnight courier," (Compl. ¶ 22 (quoting *id.* Ex. A, at § 10(g)).  If Defendant's use of email was done with malice, Plaintiff has failed to explain how.  Finally, although the third and fourth actions were taken pursuant to the express terms of the contract granting Defendant the right to terminate Plaintiff's employment without cause, in New Jersey "a party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate."  *See Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 588 (N.J. 1997).  Nevertheless, there are no factual allegations in the Complaint that would show Defendant took these actions in bad faith or for any reason other than that Defendant actually believed it was acting pursuant to the contract.  Accordingly, we must dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is granted in part and denied in part.  An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

DATE: September 19, 2011